1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   SHAWN HAMPTON, et al.,                  CASE NO. C13-0541JLR

11                          Plaintiffs,       ORDER

12               v.

13   ALLSTATE CORPORATION, et al.,

14                          Defendants.

## I.      INTRODUCTION

16        Before the court are:  (1) Defendants Allstate Indemnity Company and Allstate

17   Insurance Company's (collectively "Allstate") motion for summary judgment (Allstate

18   Mot. (Dkt. # 55), and (2) Plaintiffs Shawn and Charity Hampton, Wesley Stancil, and

19   Martin and Linda Sprinkle's motion for partial summary judgment (Plfs. Mot. (Dkt.

20   # 52).)  The court previously entered summary judgment dismissing Plaintiffs' claims for

21   bad faith and breach of contract as time-barred based on Plaintiffs' concessions with

22   respect to these claims.  (11/12/13 Order (Dkt. # 26) at 5 (citing JSR (Dkt. # 8) at 2;

1  9/16/13 Resp. (Dkt. # 15) at 3).)  The parties present dueling motions relating to

2  Plaintiffs' sole remaining claim for violation of Washington State's Consumer Protection

3  Act ("WCPA"), RCW §§ 19.86.010, *et seq.*  The court has considered the motions, all

4  submissions filed in support of and opposition thereto, the balance of the record, and the

5  applicable law.  Being fully advised, and no party having requested oral argument, the

6  court GRANTS Allstate's motion for summary judgment,  and DENIES Plaintiffs'

7  motion for partial summary judgment as MOOT.

8  **II.     BACKGROUND**

9          This is a dispute between Allstate and several of its insureds.  Plaintiffs insured

10  their homes in Glenoma, Washington, through Allstate.  (2d Am. Compl. (Dkt. # 37)

11  ¶ 3.1.)  On January 7, 2009, a series of landslides caused damage to structures and

12  personal property on Plaintiffs' properties.  (*See id.* ¶¶ 3.3-3.7; Allstate Mot at 3.)

13  Plaintiffs claim that the landslides were the result of logging activity on the hillside above

14  their properties.  (*Id.* ¶¶ 3.3-3.4.)

15          The parties are in dispute regarding whether Mr. Stancil and the Hamptons

16  provided notice to Allstate of their claims in 2009.  Plaintiffs offer a note in the insurance

17  agent's file as evidence that Mr. Stancil telephoned on January 12, 2009, to notify

18  Allstate of his claim.  (Bricklin Decl. (Dkt. # 53) Ex. D at 4.)  Mr. Stancil, however, has

19  testified that he remembers few details concerning the conversation.  (3/3/14 Wathen

20  Decl. Ex. S (Dkt. # 58-20) at 16:17-18:17; 43:21-44:18.)  In addition, Mr. Hampton

21  testifies that he reported the claim to his insurance agent, Bob Baker, shortly after his

22  property was damaged by the landslides in 2009.  (Hampton Decl. (Dkt. # 54) ¶ 2.)  Mr.

ORDER- 2

Baker, however, has testified that he did not have any such conversation with Mr. Hampton.  (3/3/14 Wathen Decl. Ex. O (Dkt. # 58-16) at 22:16-23:3.)  Neither Plaintiffs nor Allstate have asserted that the Sprinkles notified Allstate of their claim in 2009.  (*See id.* at 23:17-24:11; Allstate Resp. (Dkt. # 58) at 4; Plfs. Mot. at 6 ("The Sprinkles were misled by the policy's exclusion of flood and earth movement perils and did not make a claim at all . . . .").)

The parties agree, however, that Plaintiffs submitted written notification of their losses and the claims on their policies to Allstate in mid-December 2011.  (2/11/14 Wathen Decl. (Dkt. # 55-1) ¶¶ 3-5, Exs. A (Dkt. # 55-2), B (Dkt. # 55-3), C (Dkt. # 55-4).)  Around the same time, Plaintiffs brought suit in Lewis County against the companies that had logged the hillside and against the upslope landowner.  (*See* 8/28/13 Allstate Mot. (Dkt. # 13) at 2, 7; *see* Plfs. Mot. at 7; 8/28/13 Aragon Decl. (Dkt. # 14) Ex. N (Dkt. # 14-14) (attaching verdict form).)

On December 22, 2011, Allstate requested documentation supporting Plaintiffs' claims.  (2/11/14 Wathen Decl. Ex. D (Dkt. # 55-5).)  On December 28, 2011, Allstate inspected Plaintiffs' residences.  (*See id.* Ex. E (Dkt. # 55-6).)  On January 26, 2012, Allstate reiterated its request for documents supporting Plaintiffs' claims.  (*Id.* Ex. F (Dkt. # 55-7).)  On March 9, 2012, Allstate requested expert reports regarding the cause of the landslide.  (*Id.* Ex. H (Dkt. # 55-9).)  On March 12, 2012, counsel for Plaintiffs informed Allstate that Plaintiffs had not received any expert reports in their litigation against the logging companies and landowner.  (*Id.* Ex. I (Dkt. # 55-10).)  On April 18,

1   2012, Allstate retained geological expert Robert Pride to examine the cause of the

2   landslide.  (*Id.* Ex. K (Dkt. # 55-12); Bricklin Decl. (Dkt. # 53) Ex. E).)

3        On April 24, 2012, Plaintiffs' counsel informed Allstate of Plaintiffs' intent to

4   withdraw their claims.[1]  (*See* 2/11/14 Wathen Decl. Ex. L (Dkt. # 55-13).)  On May 8,

5   2012, Plaintiffs' counsel confirmed in writing Plaintiffs' withdrawal of their claims.  (*See*

6   *id.* Ex. M (Dkt. # 55-14).)  Plaintiffs acknowledge that they withdrew their claims with

7   Allstate out of concern that the results of Mr. Pride's investigation and opinion

8   concerning the cause of the landslide might undermine their claims against the logging

9   companies which were about to go to trial.  (Plfs. Mot. at 7.)

10       On December 14, 2012, in Plaintiffs' Lewis County lawsuit, the jury returned a

11  verdict finding the only remaining defendant in the suit to be not negligent.  (9/16/13

12  Resp. (Dkt. # 15) at 4; Aragon Decl. Ex. N.)

13       On February 21, 2013, Plaintiffs requested that their homeowners' claims with

14  Allstate be reopened.  (2/11/14 Wathen Decl. Ex. N (Dkt. # 55-15).)  Six days later, on

15  March 4, 2013, Plaintiffs filed this lawsuit against Allstate in state court.  (Not. of

16  Removal (Dkt. # 1) Ex. C (attaching state court complaint).)  Plaintiffs initially asserted

17  three causes of action against Allstate:  (1) breach of contract, (2) insurance bad faith, and

18

19

_____

20       [1] Plaintiffs state in their motion that they initially asked Allstate to hold its investigation
    in abeyance, but Allstate refused.  (Plfs. Mot. at 7.)  Plaintiffs, however, cite no evidence of this

21  fact in the record and do not explain how holding the investigation in abeyance as opposed to
    withdrawing the claim altogether would make a difference with respect to any of their claims

22  against Allstate.

(3) violation of the WCPA.  (*See id.* Ex. C at ¶¶ 4.1-4.6.)  On March 25, 2013, Allstate

removed the action to federal district court.  (*See id.*)

The court set a deadline with respect to initial disclosures of June 10, 2013.  (Ord.

re:  Initial Discl. (Dkt. # 6) at 1.)  On August 15, 2013, more than two months following

the court's imposed deadline, Plaintiffs provided their initial disclosures to Allstate.

(2/11/14 Wathen Decl. Ex. P (Dkt. # 55-17); Plfs. Initial Discl. (Dkt. # 12).)  The

damages listed in Plaintiffs' initial disclosures include items damaged in the mudflow or

landslide.  (2/11/14 Wathen Decl. Ex. P at 2, Ex. A; Plfs. Initial Discl.)  The list does not

include any expenses that Plaintiffs expressly identify as related to Allstate's

investigation of Plaintiffs' insurance claims, Allstate's alleged failure to investigate,

Allstate's alleged violation of one of Washington State's insurance regulations, or any

other alleged unfair or deceptive act by Allstate.  (*See generally id.*)

On August 28, 2013, Allstate filed an early motion for summary judgment.  The

court granted summary judgment with respect to Plaintiffs' claims for breach of contract

and insurance bad faith based on Plaintiffs' repeated admission that these claims were

time barred.  (11/12/13 Order at 5.)  The court, however, denied Allstate's motion for

summary judgment with respect to Plaintiffs' claim for violation of the WCPA.  (*See id.*

at 5-11.)

At his January 7, 2014, deposition, Mr. Stancil testified that the damages listed in

Plaintiffs' initial disclosures are the only damages that he is claiming in this lawsuit.

(2/11/14 Wathen Decl. Ex. Q (Dkt. # 55-18) (attaching Stancil Dep.) at 23:23-24:3 ("Q:

As you sit here today, are you claiming anything other than the damages that you have set

1  forth that in [Plaintiffs' initial disclosures]? . . . . A:  Right now I can't think of anything

2  else.").)  He also testified that none of Allstate's actions had caused any damage to his

3  property or business.  (*Id.* at 33:24-34:11.)

4      Mr. Sprinkle testified at his January 8, 2014, deposition that the items listed in

5  Plaintiffs' initial disclosures included all of his personal property that was damaged by

6  the 2009 landslide, but did not include any damage to his real property.  (2/11/14 Wathen

7  Decl. Ex. R (Dkt. # 55-19) (attaching M. Sprinkle Dep.) at 23:20-25:6.)  He also testified,

8  however, that the property damage he is claiming in this lawsuit is the same as the

9  property damage he claimed in the Lewis County suit against those parties allegedly at-

10 fault for the landslide that damaged his property.  (*Id.* at 27:7-25.)  In any event, Mr.

11 Sprinkle testified that none of Allstate's actions had caused any damage to his property or

12 business.  (*Id.* at 37:24-38:4.)

13      Ms. Sprinkle confirmed in her January 8, 2014, deposition that Plaintiffs' initial

14 disclosures contained "the universe" of what she was claiming in this lawsuit.  (3/3/14

15 Wathen Decl. (Dkt. # 58) Ex. S (Dkt. # 58-20) (attaching L. Sprinkle Dep.) at 12:15-

16 13:6.)  When asked if any of Allstate's actions had damaged her property, Ms. Sprinkle

17 stated that Allstate had "[d]amaged her life," because it "could have made it better."  (*Id.*

18 at 13:7-13.)  When counsel for Allstate clarified that he was referring to damage that

19 Allstate's actions may have caused to her tangible property, as opposed to emotional

20 damages, Ms. Sprinkle responded, "No."  (*Id.* at 13:11-22.)  In addition, Ms. Sprinkle

21 confirmed that none of Allstate's actions had caused any damage to her business.  (*Id.* at

22 13:23-25.)

1    Mr. Hampton testified during his January 8, 2014, deposition that the items listed

2   in Plaintiffs' initial disclosures are the damages that he is claiming in this lawsuit.

3   (2/11/14 Wathen Decl. Ex. T (Dkt. # 55-21) (attaching Hampton Dep.) at 28:1-16.)   He

4   also confirmed that none of Allstate's actions had caused damage to his property.  (*Id.* at

5   40:15-17.)  He did state, however, that Allstate's actions had damaged his horse breeding

6   business.  (*Id.* at 40:18-25.)  Mr. Hampton testified that he breeds horses on his property

7   and sells the colts.  (*Id.* at 41:2-5.)  He testified that, because Allstate failed to pay his

8   claim in 2009, he could not repair the fences on his property.  (*Id.* at 41:6-23.)  Because

9   his fences were down, he could not keep his stallion separated from his five mares, and as

10   a result he had to geld the stallion.  (*Id.*)  He testified that he was selling each colt for

11   $2,000.00 before he ended his horse breeding business.  (*Id.* at 41:11-12.)  He testified

12   that he had operated the business since 2006 and earned approximately between

13   $10,000.00 and $25,000.00 during that time period.  (*Id.* at 43:14-44:1.)  He also stated

14   that he did not have a license for the business, did not operate the business under a

15   business name, operated solely in cash, had no records of any of the income he had

16   earned, and had not reported any of the income on his tax returns.  (*Id.* at 41:24-42:2;

17   43:5-13.)

18    The alleged damage to Mr. Hamptons' horse breeding business was not described

19   or listed in Plaintiffs' initial disclosures.  (*See generally* Plfs. Initial Discl.)  Mr.

20   Hampton's January 8, 2014, deposition was the first time Plaintiffs disclosed these

21   alleged damages.

22

1    The discovery period closed on January 13, 2014—just a few days following

2  Plaintiffs' depositions.  (Min. Ord. (Dkt. # 9) at 1.)  Plaintiffs did not supplement their

3  initial disclosures or provide a computation of the damages that Mr. Hampton asserts he

4  lost in his horse breeding business within the discovery period.  (*See generally Dkt.*)  At

5  the time that Allstate filed its motion for summary judgment on February 11, 2014,

6  Plaintiffs still had not supplemented or updated their list or their calculation of damages

7  contained in their initial disclosures.  (*See generally* Dkt.)  Plaintiffs did not file a

8  supplementation to their initial disclosures until March 6, 2014—nearly two months

9  following the close of discovery and three days after Plaintiffs filed their response to

10  Allstate's motion for summary judgment.  (*See* Plfs. Supp. Discl. (Dkt. # 62).)  Plaintiffs'

11  supplemental disclosure was filed almost three months after the January 13, 2014,

12  discovery cutoff, and nearly a month following the February 11, 2014, dispositive

13  motions deadline.  (Sched. Ord. (Dkt. # 9).)  Plaintiffs' supplemental disclosure does not

14  include a list or computation any of the damages Mr. Hampton testified at his January 8,

15  2014, deposition he had incurred with respect to his horse breeding business.  (*See*

16  *generally* Plfs. Supp. Discl.)

17    Following the close of discovery, Allstate now moves a second time for summary

18  judgment with respect to Plaintiffs' WCPA claim.  (*See generally* Allstate Mot.)  Allstate

19  asserts that it is entitled to summary judgment because Plaintiffs have failed to prove

20  certain required elements of their WCPA claims including damages and causation.

21  Specifically, Allstate asserts that Plaintiffs cannot prove that they incurred an injury to

22  their business or property caused by Allstate's alleged unfair or deceptive conduct.

ORDER- 8

1  (Allstate Mot. at 2.)  Plaintiffs, on the other hand, move for partial summary judgment

2  with respect to the other elements of their WCPA claims.  (Plfs. Mot. at 1-2.)

3  Specifically, Plaintiffs assert that undisputed facts establish that Allstate has engaged in

4  violations of Washington State's insurance regulations which constitute a per se unfair

5  trade practice and a per se impact on the public interest.  (*See generall* Plfs. Mot.)  The

6  court GRANTS Allstate's motion for summary judgment and consequently DENIES

7  Plaintiffs' motion for partial summary judgment as MOOT.

**III.   ANALYSIS**

**A. Standards on Summary Judgment**

Summary judgment is appropriate if the evidence, when viewed in the light most

favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of

L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

showing there is no genuine issue of material fact and that he or she is entitled to prevail

as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her

burden, then the non-moving party "must make a showing sufficient to establish a

genuine dispute of material fact regarding the existence of the essential elements of his

case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477

F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in

the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378

(2007).

ORDER- 9

1    **B.  Injury and Causation under the WCPA**

2        A claim under the WCPA requires proof of five elements:  "(1) [an] unfair or

3    deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact,

4    (4) injury to plaintiff in his or her business or property, [and] (5) causation." *Hangman*

5    *Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

6    Before a WCPA injury may be found, the claimant must establish an injury to his or her

7    business or property.  *Id.*  The injury, however, "need not be great."  *Mason v. Mortg.*

8    *Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990).  The final element requires the existence of a

9    causal link between the deceptive act and the injury suffered.  *Schmidt v. Conerstone,*

10   *Invs., Inc.*, 795 P.2d 1143, 1152 (Wash. 1990).  Indeed, harm from the insurer's bad faith

11   acts is an element of every action for bad faith handling of an insurance claim or for

12   violation of the WCPA.  *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 935-36

13   (Wash. 1998).  Allstate asserts that it is entitled to summary judgment because Plaintiffs

14   fail to demonstrate any facts in support of elements four or five of their WCPA claims.

15   (Allstate Mot. at 12-14.)

16       Allstate asserts that, with the possible exception of damage to Mr. Hampton's

17   horse breeding business, not one Plaintiff identified any damage to property or business

18   caused by any of Allstate's actions.  (Mot. at 11-14.)  Indeed, with the exception of Mr.

19   Hampton's horse breeding business, all Plaintiffs have denied any damage to their

20   property or business caused by Allstate's actions.  (2/11/14 Wathen Decl. Ex. Q

21   (attaching Stancil Dep.) at 33:24-34:11; *id.* Ex. R (attaching M. Sprinkle Dep.) at 37:24-

22   38:4; *id.* Ex. S (attaching L. Sprinkle Dep.) at 13:23-25; *id.* Ex. T (attaching Hampton

1    Dep.) at 40:15-41:23; 43:14-44:1.)  Allstate asserts that Plaintiffs' disclosure of the

2    alleged damage to Mr. Hampton's horse breeding business was untimely and should be

3    excluded.

4         Despite Mr. Hampton's deposition testimony, Plaintiffs do not assert damages to

5    Mr. Hampton's horse breeding business in response to Allstate's motion for summary

6    judgment on their WCPA claims.  (*See generally* Plfs. Resp.)  Indeed, Plaintiffs do not

7    refer to these damages at all in their responsive memorandum.  (*See generally id.*)

8    Instead, Plaintiffs assert that they incurred "investigative expenses as a direct result of

9    Allstate's failure to investigate [their] claims."  (Plfs. Resp. at 5.)  As evidence of these

10   expenses, Plaintiffs cite to their expert reports in this litigation.  (*Id.* (citing Plfs. Discl.

11   Expert Witnesses (Dkt. ## 28, 31).)  The court addresses each of these arguments and

12   categories of damages in turn.

13        **1.   The Alleged Damage to Mr. Hampton's Horse Breeding Business Is Not**
             **Applicable to Plaintiffs' WCPA claim**
14

15        The damages to Mr. Hampton's horse breeding business are not applicable to his

16   WCPA claim.  Mr. Hampton testified that the damage to his horse breeding business

17   occurred because Allstate failed to cover the cost to repair fences under his homeowner

18   policy.  (2/11/14 Wathen Decl. Ex. T at 41:6-23.)  Plaintiffs are barred from seeking

19   coverage under their policies for the landslide in question.  The one-year suit limitation

20   clause in Plaintiffs' policies required Plaintiffs to bring any suit or action against Allstate

21   within one year after inception of the loss or damage.  (Aragon Decl. (Dkt. # 14) Ex. A

22   (Dkt. # 14-1) at 21.)  Plaintiffs have acknowledged that their coverage action is time-

1  barred by this clause (JSR (Dkt. # 8) at 2; 9/16/13 Resp. (Dkt. # 15) at 3), and the court

2  previously entered summary judgment in favor of Allstate on this claim (11/12/13 Order

3  at 5).  Indeed, any action based on the policies would have been time-barred before

4  Plaintiffs' counsel provided written notice of the claims to Allstate in December 2011,

5  before Plaintiffs withdrew their claims in late April or early May, 2012, and before

6  Plaintiffs reopened their claims in February, 2013.

7        If Mr. Hampton's claim had arisen in the context of a third-party reservation of

8  rights case, then he might still have a claim for coverage by estoppel through his WCPA

9  claim.  *See Coventry Assocs.*, 961 P.2d at 939 (citing *Safeco Ins. Co. of Am. v. Butler*, 823

10  P.2d 499, 505-06 (Wash. 1992)).  Plaintiffs' homeowner policies, however, fall within

11  the first party context.  In *Coventry*, the Washington Supreme Court held that in the

12  context of first party policies, such as Plaintiffs' homeowner policies, coverage by

13  estoppel is not an appropriate remedy.  *Coventry*, 961 P.2d at 939-40.  Thus, even if

14  Allstate's actions constituted a per se violation of the WCPA and a per se impact on the

15  public interest as argued in Plaintiffs' motion for partial summary judgment (*see*

16  *generally* Plfs. Mot.), Plaintiffs are not entitled to coverage under their policies or

17  damages that they might have been able to assert with respect to their coverage claims as

18  a part of their WCPA claim.  Thus, any claim for damages arising out of Mr. Hampton's

19  claim for coverage, including the repair of his fences, is time-barred, and cannot be

20  revived through his WCPA claim.

21        In any event, as noted above, Plaintiffs do not assert Mr. Hampton's alleged

22  damages to his horse breeding business in response to Allstate's summary judgment

motion on Plaintiffs' WCPA claim.  (*See generally* Plfs. Resp.)  This may be an implicit

recognition by Plaintiffs that, despite their WCPA claim, the policy's suit limitation

clause precludes Mr. Hampton from pursuing his claim that Allstate wrongfully denied

coverage with respect to the repair costs for his fences.  *See e.g. Simms v. Allstate Ins.*

*Co.*, 621 P.2d 155, 159 (Wash. Ct. App. 1980) (applying contractual limitation period to

plaintiff's contract claim despite allegations of bad faith); *see also Hunter v. Regence*

*Blue Shield*, No. 56638-5-I, 2006 WL 2396643, at *6 (Wash. Ct. App. Aug. 21, 2006)

(unpublished) ("[T]he contractual limitation period would be enforceable even in the face

of bad faith by Regence.") (citing *Simms*, 621 P.2d at 159); *Schaeffer v. Farmers Ins.*

*Exchange*, No. 48818-0-1, 2002 WL 662889, at *5 (Wash. Ct. App. Apr. 22, 2002)

(unpublished) ("The policy's suit limitation clause precludes [plaintiff] from pursuing its

claim that Farmers wrongfully denied coverage.") (citing *Coventry*, 961 P.2d 933).

Based on the foregoing case law and analysis, the court concludes that the alleged

damage to Mr. Hampton's horse breeding business is not cognizable with respect to his

WCPA claim and cannot serve as evidence supporting elements four and five of his

claim.

**2.  Plaintiffs' Disclosure of Evidence of Damage to Mr. Hampton's Horse**
**Breeding Business is Untimely and Should Be Excluded**

Even if, however, the alleged damage to Mr. Hampton's horse breeding business

was cognizable with respect to his WCPA claim, Allstate argues that the court should

disregard it.  Allstate asserts that, despite the fact that Mr. Hampton must have known of

the alleged damages to his horse breeding business shortly after the landslide occurred in

1   2009, Plaintiffs failed to disclose these damages in their Federal Rule of Civil Procedure

2   26(a)(1)(A)(iii) initial disclosures, have never provided a "computation" of these

3   damages as required by the same Rule, and have never included these damages or any

4   computation thereof in any supplemental disclosures as required by Rule 26(e)(1).  (*See*

5   Allstate Mot. at 13.)  In addition, Allstate argues that Plaintiffs' supplementation of its

6   disclosures nearly two months after the discovery cut-off is untimely and should be

7   excluded.  (*See* Allstate Reply (Dkt. # 63) at 1, n.2.)

8          Rule 37(c)(1) forbids the use of any information required to be disclosed by Rule

9   26(a) that is not properly disclosed.  *See R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d

10   1240, 1246 (9th Cir. 2012) (quoting *Yeti by Molly Ltd. V. Deckers Outdoor Corp.*, 259

11   F.3d 1101, 1106 (9th Cir. 2001)).  Specifically, Rule 37(c)(1) provides:

12          If a party fails to provide information or identify a witness as required by
        Rule 26(a) or (e), the party is not allowed to use that information or witness

13        to supply evidence on a motion, at a hearing, or at a trial, unless the failure
        was substantially justified or is harmless.

14
        In addition to or instead of this sanction, the court, on motion and after

15        giving an opportunity to be heard:

16        (A) may order payment of the reasonable expenses, including attorney's
        fees, caused by the failure;

17
        (B) may inform the jury of the party's failure; and

18
        (C) may impose other appropriate sanctions, including any of the orders

19        listed in Rule 37(b)(2)(A)(i)-(vi).

20   Fed. R. Civ. P. 37(c)(1).  The party facing sanctions bears the burden of proving that its

21   failure to disclose the required information was substantially justified or is harmless.

22   *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008).  Plaintiffs make no such

ORDER- 14

1    showing with respect to their failure to provide information concerning the alleged

2    damages to Mr. Hampton's horse breeding business in either their initial or supplemental

3    disclosures.  Indeed, as noted above, Plaintiffs do not refer to Mr. Hampton's horse

4    breeding business at all in their responsive memorandum to Allstate's motion.  (*See*

5    *generally* Plfs. Resp. (Dkt. # 59).)

6         The exclusion of evidence under Rule 37(c)(1) has been described "as a self-

7    executing, automatic sanction to provide a strong inducement for disclosure of material."

8    *Yeti by Molly*, 259 F.3d at 1106.  Nevertheless, where it would effectively constitute

9    dismissal of a claim, the court must consider (1) whether the party's noncompliance

10   involves willfulness or bad faith, as well as (2) the availability of lesser sanctions.  *R & R*

11   *Sails*, 673 F.3d at 1247.  Because Plaintiffs also rely on other alleged damages (namely,

12   alleged investigative costs) to support their WCPA claim (*see* Plfs. Resp. at 1-2, 4-6), it is

13   unclear if exclusion of Mr. Hampton's alleged damages to his horse breeding business

14   would "amount[] to a dismissal of a claim."  *R & R Sails*, 673 F.3d at 1247.  The court

15   need not decide this issue, however, because even if the higher bar set forth in *R & R*

16   *Sails* is applicable, exclusion as a sanction is warranted here.

17        First, the court finds that Plaintiffs' failure to include Mr. Hampton's alleged

18   damages to his horse breeding business in their initial and supplemental disclosures was

19   willful.  Plaintiffs acknowledge that "with regard to detailing [their] losses, [they] have

20   not been perfect."  (Plfs. Resp. at 16.)  They offer the excuse that their "focus" was on

21   certain losses arising under the policy.  (*Id.* at 16-19.)  As discussed above, however,

22   because Plaintiffs have acknowledged that their coverage claims are time-barred, these

ORDER- 15

1    damages are not recoverable and cannot be revived through their WCPA claim.  Thus,

2    Plaintiffs failed to identify any damages in their initial or supplemental disclosures that

3    are applicable to their WCPA claim.  (*See generally* Plfs. Initial Discl.; Plfs. Supp. Discl.)

4            Mr. Hampton testified that because Allstate did not cover his claim to repair his

5    fences, he was forced to geld his stallion in the spring of 2009, which ended his horse

6    breeding business.  (2/11/14 Wathen Decl. Ex. T at 40:18-41:23.)  Thus, based on the

7    factual record, there is no doubt that Mr. Hoffman would have known of these damages

8    no later than Spring 2009—shortly after the landslide occurred.  Despite this knowledge,

9    Plaintiffs did not include a description of, documentation for, or a calculation of these

10   damages in their initial disclosures.  (*See generally* Plfs. Initial Discl.)  Further, in

11   response to Allstate's present motion for summary judgment, which expressly argues that

12   Mr. Hampton's alleged damages should not serve as an underpinning for Plaintiffs'

13   WCPA claim (*see* Mot. at 6-7, 12-13), Plaintiffs fail to respond to Allstate's argument

14   concerning Mr. Hampton's horse breeding business or even mention the business at all in

15   their responsive memorandum (*see generally* Plfs. Resp.).  Finally, despite being apprised

16   of the issue by Allstate's present motion, Plaintiffs again fail to include Mr. Hampton's

17   alleged damages to his horse breeding business, or a calculation of those damages, in

18   their subsequent late-filed supplemental disclosures.  (*See generally* Plfs. Supp. Discl.)

19   Having been expressly apprised of the issue by Allstate's motion, the only reasonable

20   interpretation of the factual record is that Plaintiffs deliberately and willfully omitted any

21   reference to Mr. Hampton's alleged damages to his horse breeding business in their

22   supplemental disclosures.

ORDER- 16

1    Second, the court finds that lesser sanctions would not alleviate the harm caused to

2 Allstate by Plaintiffs' failure to include Mr. Hampton's alleged damages in their

3 disclosures.  In determining the appropriateness of sanctions, the court ordinarily

4 considers:  "1) the public's interest in expeditious resolution of litigation; 2) the court's

5 need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy

6 favoring disposition of cases on their merits; [and] 5) the availability of less drastic

7 sanctions."  *Wendt v. Host Intern'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).  In this case,

8 the first three of these factors—the public's interest in expeditious resolution of litigation,

9 the court's need to manage its docket, and the risk of prejudice to Allstate—all weigh in

10 favor of exclusion.  Despite Mr. Hampton's knowledge of the alleged harm to his horse

11 breeding business in the spring of 2009, Allstate did not learn of these alleged damages

12 until nearly five years later at Mr. Hampton's January 8, 2014 deposition.  The discovery

13 cut-off occurred just five days later on January 13, 2014.  (Min. Ord. at 1.)  Thus, there

14 was virtually no time for Allstate to inquire further or conduct any follow-up discovery

15 into Mr. Hampton's business.  Further, the trial in this matter is scheduled on May 12,

16 2014, which is less than one month away.  (*Id.*)  Permitting Plaintiffs to introduce this

17 evidence now would require a delay in the trial date to provide Allstate with the

18 opportunity to conduct further discovery.

19    Ordinarily, the public policy favoring disposition of cases on the merits would

20 weigh against exclusion, but here, Plaintiffs have virtually abandoned any claim Mr.

21 Hampton may have had concerning alleged damages to his horse breeding business.

22 Plaintiffs fail to even mention these alleged damages in response to Allstate's second

ORDER- 17

motion for summary judgment on Plaintiffs' WCPA claims (*see generally* Plfs. Resp.)
and also fail to include any reference to these damages in their late-filed supplemental
disclosures (*see generally* Plfs. Supp. Discl.).  The court is left to conclude that Plaintiffs
no longer seek a disposition on the merits concerning these damages.  Based on the
foregoing, the court finds that exclusion, rather than an alternate form of sanctions, is
warranted.  As a result, even if the damage to Mr. Hampton's horse breeding business
were cognizable with respect to Plaintiffs' WCPA claim, the court would not consider it
here.

### 3.   Plaintiffs' Expert Witness Expenses Are Not Cognizable As WCPA Damages

The only damages that Plaintiffs raise to establish elements four and five of their
WCPA claims in response to Allstate's motion for summary judgment are expenses
Plaintiffs allegedly incurred to investigate their coverage claims when Allstate allegedly
refused to do so. (*See* Plfs. Resp. at 2-3, 5 ("As long as plaintiffs incurred investigative
expenses due to Allstate's failure to investigate, plaintiffs have established the fourth and
fifth elements of their CPA claim.").)  Under Washington law, such investigative
expenses can be recovered as damages in a WCPA action to the extent the expenses were
incurred as direct result of the carrier's breach of contract or bad faith.  *See Coventry*, 961
P.2d at 938-39.

The only evidence of investigative expenses that Plaintiffs identify and
substantiate, however, consists of the costs associated with retaining the expert witnesses
whom Plaintiffs have named in this lawsuit.  (*See* Plfs. Resp. at 5 ("Nor is there any

1    doubt that plaintiffs have incurred investigative expenses.  Plaintiffs have filed reports

2    (on time) from three experts.").)  One exception to the rule announced in *Coventry* with

3    respect to investigative expenses relates to the costs litigants incur in the WCPA litigation

4    itself.  Washington courts have repeatedly held that costs incurred in having to prosecute

5    a WCPA claim are not sufficient to show injury to property or business—the fourth

6    element of a WCPA claim.  *See Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 901

7    (Wash. 2009) ("The cost of instituting a [W]CPA action . . . could not, itself, constitute

8    injury."); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 825 P.2d 714, 721

9    (Wash.Ct.App.1992) ( "[M]ere involvement in having to . . . prosecute a CPA

10   counterclaim is insufficient to show injury to her business or property.").  Indeed, in

11   *Ledcor Industries (USA), Inc. v. Mutual of Enumclaw Insurance Co.*, 206 P.3d 1255

12   (Wash. Ct. App. 2009), the Washington Court of Appeals specifically held that expert

13   witness fees and other expenses in the WCPA litigation itself were not cognizable

14   injuries under the WCPA.  *Id.* at 1262.  Because the investigative expenses Plaintiffs

15   assert in response to Allstate's motion relate to the retention of expert witnesses in this

16   litigation, such expenses cannot establish an evidentiary basis to support element four—

17   injury to property or business—of Plaintiffs' WCPA claims.[2]

18

19

20       [2] Although Plaintiffs have not asserted this argument in their responsive memorandum,
     there is evidence on the record indicating that Plaintiffs initially retained one of their present
21   expert witnesses, Mr. Chris Brummer, prior to this litigation for purposes of their Lewis County
     lawsuit against the logging companies.  (*See* 9/16/13 Bricklin Decl. (Dkt. # 16) Exs. B, C, D
22   (attaching three declarations from Mr. Brummer with captions from Plaintiffs' Lewis County
     litigation).)  Plaintiffs have described their claims against the logging companies in Lewis
     County as "far larger than their insurance claims" against Allstate.  (Plfs. Mot. at 7.)  The

1     Because Plaintiffs have failed to come forward with any evidence establishing

2   either elements four—injury to Plaintiffs' business or property—or five—a causal link

3   between Allstate's alleged deceptive act and the injury Plaintiffs suffered—the court

4   concludes that Allstate is entitled to summary judgment with respect to Plaintiffs' WCPA

5   claim.[3]  Because the court GRANTS Allstate's motion for summary judgment, Plaintiffs'

6   motion for partial summary judgment with respect to elements one, two, and three of

7   their WCPA claim is MOOT.  Accordingly, the court DENIES Plaintiffs' motion for

8   partial summary judgment.[4]

9

10  evidence indicates that Mr. Brummer was initially hired to pursue Plaintiffs' claims against the
logging companies in Lewis County and then subsequently hired by Plaintiffs to serve as an
11  expert witness in this lawsuit as well.  (*See id.* Ex. D ¶ 1 ("I [Chris Brummer] previously filed
two declarations in this [Lewis County] case.  I file this [third] declaration in response to
12  statements made in the recently filed Declaration of Ed Heavey and in pleadings filed by
defendants in response to the pending partial summary judgment motion [in the Lewis County
13  litigation]."); Plfs. Expert Witness. Discl. (Dkt # 28) ¶ 3 (identifying Mr. Brummer as an expert
witness in this case).)  There is no evidence in the record, however, in the form of a declaration
14  or otherwise, that Plaintiffs hired Mr. Brummer prior to this litigation to investigate Plaintiffs'
claims against Allstate or as a direct result of any of Allstate's alleged unfair or deceptive actions
15  in this case.  As the party opposing summary judgment and with the burden of proof at trial,
Plaintiffs cannot rest of their allegations, but rather have an obligation under Federal Rule of
16  Civil Procedure 56 to come forward with "significant probative evidence" as to each element of
their WCPA claims.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986) (party
17  opposing summary judgment must come forward with significant probative evidence as to each
element of the claim on which it bears the burden of proof).  Here, Plaintiffs failed to establish
18  the fifth element of their WCPA claim—the existence of a causal link between Allstate's alleged
unfair or deceptive acts and the expenses Plaintiffs incurred with respect to their retention of Mr.
19  Brummer prior to the present lawsuit.  Accordingly, in the absence of any such causal evidence,
Plaintiffs' retention of Mr. Brummer prior to their institution of this lawsuit does not alter the
20  court's conclusion with respect to Allstate's motion for summary judgment.

21      [3] Because the court grants Allstate's motion for summary judgment on this ground, it
need not consider other alternative bases for summary judgment raised in Allstate's motion.

22      [4] In their memorandum in response to Plaintiffs' motion for partial summary judgment,
Allstate moves to strike certain portions of Plaintiffs' motion for lack of foundation under

ORDER- 20

1

### IV.    CONCLUSION

2        Based on the foregoing, the court GRANTS Allstate's motion for summary

3  judgment with respect to Plaintiffs' sole remaining claims under the WCPA (Dkt. # 55)

4  and DENIES Plaintiffs' motion for partial summary judgment (Dkt. # 52) as MOOT.  In

5  addition, because the court's order today eliminates the need to conduct a trial, the court

6  DENIES as MOOT Allstate's motions in limine (Dkt. # 69).

7        Dated this 18th day of April, 2014.

8

9

10  _____
    JAMES L. ROBART
11  United States District Judge

12

13

14

15

16

17

18

19

20

21  Federal Rule of Evidence 901.  (Allstate Resp. (Dkt. # 58) at 1-2.)  Because the court denies
    Plaintiffs' motion for partial summary judgment, the court also denies Allstate's motion to strike
22  as moot.

ORDER- 21